## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDWARD E. ROBERSON,
#R60232,

          **Plaintiff,**

v.

                              **Cause No. 3:19-cv-01188-GCS**

FRANK E. LAWRENCE,
CRAIG AGGELMEIER,
JACUELINE LASHBROOK,
SLAINE, *dental assistant,*
MORRISON, *correctional officer,*
MOORE, *correctional officer,* and
OSTLUNDMEINER, *correctional officer,*

          **Defendants.**

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Edward Roberson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Roberson claims that he was denied access to the courts, denied adequate dental care, and subjected to cruel and unusual punishment. He seeks monetary damages.

The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is

---

[1]    The Court has jurisdiction to screen the First Amended Complaint in light of Roberson's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007).

### THE FIRST AMENDED COMPLAINT

Roberson alleges that he was transferred to Menard around September 29, 2018. (Doc. 14, p. 9). At the time, he was litigating three civil suits in the United States District Court for the Central District of Illinois for events that occurred at Rock Island County Jail, cases No. 14-cv-04266-JES, No. 17-cv-04177-JBM, and No. 18-cv-04029-CSB. His responses to the summary judgment motions filed by the defendants in two of the cases were due by December 26, 2018. He sent requests to Frank Lawrence and Jacueline Lashbrook asking for legal assistance such as visits to the law library, reading materials, and help from law clerks, but he was not given any help. *Id.* at p. 9-10. He did not receive legal assistance until March 2019. Because he was not allowed to go to the law library or use the legal assistance program, he could not fully respond to the motions for summary judgment. Summary judgment was granted in case No. 17-cv-04266-JES on February 4, 2019, and in case No. 17-cv-04177-JBM on August 28, 2019. *Id.* at p. 10.

On April 26, 2019, while housed in the segregation unit, Officer Moore came to Roberson's cell and informed him that he had a call pass to visit the dentist. (Doc. 14, p.

10-11). Moore looked at Roberson's hair and stated that he could not have braids and then disappeared. Moore then canceled the dental appointment and falsely reported that Roberson refused to attend the dental appointment. Roberson had severe tooth pain and so, he made several requests for medical care. He saw the walk-in dentist on May 15, 2019. During the appointment, the dentist determined that tooth #3 needed to be extracted and tooth #12 needed a permanent filling to replace the temporary filling that had been placed on the tooth while Roberson was incarcerated at Statesville Correctional Center. Roberson was told that a separate appointment would be scheduled to have the procedures performed. *Id.*

On June 18, 2019, the temporary filling on tooth #12 fell off the tooth, and the "nerve had grown through causing extreme pain." (Doc. 14, p. 11). Roberson began filing multiple health care requests to receive treatment for the pain. Because of the pain, it was difficult for Roberson to eat, drink, and sleep. *Id.* at p. 12. He received 18 ibuprofen tablets on August 11, 2019, but those lasted only four days. *Id.*

Roberson was examined by Dr. Aggelmeier and dental assistant Slaine on September 15, 2019. (Doc. 14, p. 12). Dr. Aggelmeier determined that both teeth needed to be extracted because, after waiting for treatment, tooth #12 had deteriorated. Roberson's mouth was now infected, and so, Dr. Aggelmeier issued penicillin and more ibuprofen and had to reschedule the extraction procedure. *Id.* By September 25, 2019, the medication was gone and the infection and pain had worsened. On October 15, 2019, after submitting more requests and complaining to the correctional officers, Roberson was issued more ibuprofen and cephalexin. *Id.*

Roberson visited the dentist again on November 1, 2019. (Doc. 14, p. 13). He saw Dr. Aggelmeier and dental assistant Slaine. Dr. Aggelmeier determined that tooth #18 also needed to be filled. Dr. Aggelmeier and Slaine then extracted tooth #12 but not tooth #3. They also extracted another tooth that they determined would cause Roberson future problems and injured his gum. *Id.*

On April 8, 2020, while housed in the segregation unit, Correctional Officer Morrison gave Roberson a hard tray, rather than his approved religious kosher diet tray served in Styrofoam. (Doc. 14, p. 13). Morrison had previously served Roberson the wrong meal several times. *Id.* Roberson informed Morrison that he is approved for a kosher tray, and Morrison responded, "you will take whatever I give you." *Id.* at p. 14. Roberson told Morrison that he would file grievances, and Morrison said that if Roberson threatens him then he would make Roberson's time in segregation hell. *Id.* Morrison also said he would not feed Roberson, give Roberson his mail, let him of the cell for anything, and "if someone [died in Roberson's family he] won't find out." *Id.* Morrison then shut off the water supply to Roberson's cell.

Roberson filed a grievance regarding the incident and wrote to his counselor, internal affairs, and the warden. (Doc. 14, p. 14). The next morning, he asked Correctional Officer Moore to turn the water back on, but Moore refused because he was not the one who shut off the water supply. Roberson asked to speak with a "white shirt" but Moore left. *Id.* at p. 14-15.

Moore later returned to pass out lunch trays. (Doc. 14, p. 15). When Moore delivered Roberson's tray, Roberson placed his hand through the chuckhole and asked

to speak to a white shirt. Correctional Officer Ostlundmeiner heard the request and closed the chuckhole door on Roberson's hand. *Id.* at p. 15. Roberson begged for Ostlundmeiner to release his hand, but Ostlundmeiner applied more pressure and said, "who your daddy bitch, say sorry, and say you [won't] do it again." *Id*. While his hand was stuck in the chuckhole, Moore was banging, hitting, and kneeing Roberson's hand. As a result, Roberson had multiple fractures, bruising, and bleeding. Roberson then asked for medical attention. The officers refused and walked away. *Id.* at p. 16.

That afternoon, Morrison wrote something on Roberson's cell door informing all prison staff "to inflict hate" towards Roberson. (Doc. 14, p. 16). Morrison then refused Roberson a shower, dinner tray, and "probably mail." *Id.*

Roberson then filed a grievance. Roberson did not receive a response, and so, he wrote a request about the grievance to clinical services on April 28, 2020. (Doc. 14, p. 16). Counselor Quick responded that no grievance was received. Roberson was instructed to resubmit the grievance but claims that grievances were very hard to come by, and so, he did not rewrite the grievance. *Id.*

PRELIMINARY DISMISSALS

Roberson attempts to bring a claim against Jacueline Lashbrook, the warden of programs, for violating his Fourteenth Amendment due process rights. He alleges that Lashbrook failed to provide grievance forms depriving him of the ability to grieve the various unconstitutional incidents that occurred at Menard. (Doc. 14, p. 20). This claim is dismissed. It is well-settled that issues with grievance procedures do not constitute violations of Fourteenth Amendment. Prison grievance procedures are not mandated by

the Constitution and do not by their very existence create interests protected by the due

process clause of the Fourteenth Amendment. *See Owens v. Hinsley*, 635 F.3d 950, 953-954;

*George*, 507 F.3d at 609. Accordingly, this claim is dismissed.

DISCUSSION

Based on the allegations of the First Amended Complaint, the Court finds it

convenient to designate the following Counts:

| | |
|---|---|
| **Count 1:** | First Amendment denial of access to courts claim against Lawrence and Lashbrook for failing to provide Roberson legal assistance to litigate his claims, including access to the law library, legal materials, and law clerks. |
| **Count 2:** | Fourteenth Amendment due process claim against Lawrence and Lashbrook for failing to provide Roberson legal assistance to litigate his claims, including access to the law library, legal materials, and law clerks. |
| **Count 3:** | Eighth Amendment claim against Moore, Lashbrook, Aggelmeier, and Slaine for deliberate indifference to Roberson's dental needs and associated pain. |
| **Count 4:** | Fourteenth Amendment due process claim against Moore for refusing to take Roberson to the health care unit and falsely reporting that Roberson refused his dental appointment on April 26, 2019. |
| **Count 5:** | Fourteenth Amendment due process claim against Lashbrook, Aggelmeier, and Slaine for failing to provide adequate medical assistance. |
| **Count 6:** | Eighth Amendment claim of cruel and unusual punishment against Morrison for refusing to serve Roberson his kosher tray, threatening Roberson, shutting off the water to his cell, not issuing Roberson his mail, denying him showers, and directing other staff to mistreat him. |
| **Count 7:** | Fourteenth Amendment due process claim against Morrison for depriving Roberson of his water supply and refusing to give him his dinner tray. |

**Count 8:**      Eighth Amendment claim of excessive force against Ostlundmeiner and Moore for closing Roberson's hand in the chuckhole door on April 9, 2020.

**Count 9:**      Fourteenth Amendment due process claim against Ostlundmeiner and Moore for refusing to seek medical assistance after injuring Roberson's hand in the chuckhole door and refusing to allow Roberson to talk with a white shirt when requested.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

SEVERANCE

As an initial matter, the Court has determined that Roberson's claims are improperly joined in a single action. *See George*, 507 F.3d at 607. The claims fall into three distinct groups: (1) Counts 1 and 2 arising from the denial of access to legal resources that ultimately resulted in the dismissal of two civil lawsuits in 2019; (2) Counts 3, 4, and 5 arising from the delay and denial of adequate dental treatment beginning in April 2019; and (3) Counts 6, 7, 8, and 9 arising from the infliction of cruel and unusual punishment against Roberson while he was held in segregation in April 2020. These three groups of claims are unrelated and involve separate transactions or occurrences. Therefore, the Court will exercise its discretion and sever Counts 1-2 and 6-9 into two separate suits. *See*

---

[2]      *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

FED. R. CIV. PROC. 18, 20, and 21. *See also Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017)(noting that district courts should not allow inmates to combine multiple lawsuits into a single complaint); *Hinsley*, 635 F.3d at 952 (noting that unrelated claims belong in separate lawsuits). Counts 3, 4, and 5 will remain in this action, and the merits of these claims will be reviewed in this Order.

### Count 3

To prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno* v. *Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citations and quotation marks omitted). A condition is considered sufficiently serious if the failure to treat it could result in the unnecessary and wanton infliction of pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Additionally, the Seventh Circuit has held that a dental condition could constitute a serious medical need and is objectively serious when failure to treat it causes an inmate to suffer an array of problems. *See Board v. Farnham,* 394 F. 3d 469, 480 (7th Cir. 2005).

Roberson has stated a sufficient factual basis to proceed with his deliberate indifference claim against Aggelmeier and Slaine. Roberson claims that he had teeth that required extraction, he developed an infection which needed treatment with medication, and the pain was so severe that he had difficulty eating, drinking, and sleeping. These allegations are sufficient to suggest that Roberson was suffering from an objectively serious condition.

As to whether Dr. Aggelmeier and Slaine acted with deliberate indifference,

Roberson alleges he was first seen by Defendants on September 15, 2019. Dr. Aggelmeier determined that in addition to tooth #3, tooth #12 also needed to be extracted, rather than filled, because the delay in treatment had caused tooth #12 to deteriorate. Despite knowing that a delay in care had already caused further problems for Roberson's teeth and the development of an infection, Dr. Aggelmeier and Slaine failed to provide Roberson enough medication to last until his next appointment and did not see him again until November 1, 2019. At this appointment, he again was not provided treatment for all of his teeth, as tooth #3 was not extracted, and Defendants caused further injury and pain during the procedures. Construing the First Amended Complaint liberally, these allegations are sufficient to state a claim that Dr. Aggelmeier and Slaine acted with deliberate indifference towards Roberson's dental needs.

Count 3, however, will be dismissed as to Lashbrook and Moore. Roberson claims that Moore did not take him for his dental appointment on April 26, 2019, and falsely reported that Roberson refused to go to the appointment. The First Amended Complaint simply states that Moore informed Roberson that "he had a call pass to visit health care to see the dentist." (Doc. 14, p. 11). Roberson does not sufficiently allege that Moore was aware that he suffered from an objectively serious medical condition and then consciously disregarded that risk. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Likewise, it is not clear from the First Amended Complaint that Lashbrook had any knowledge that Roberson was suffering from a serious medical condition. Roberson alleges that Lashbrook failed to schedule him for a dental appointment leaving him in severe pain. (Doc. 14, p. 18). Again, deliberate indifference requires that the

defendant knew of the plaintiff's condition and then acted with criminal recklessness. *See Holloway*, 700 F. 3d at 1073. *Accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(stating that "[d]eliberate indifference is intentional or reckless conduct, not mere negligence."). Furthermore, under Section 1983, Lashbrook cannot be held liable simply because she is in a supervisory role. To be held individually liable a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)(quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). For these reasons Count 3 against Moore and Lashbrook are dismissed.

### Counts 4 and 5

Roberson claims that (1) Moore violated his right to due process by refusing to escort him to health care because his hair was in braids and by falsely reporting that he refused his appointment; and (2) Lashbrook, Aggelmeier, and Slaine violated his right to due process by failing to provide adequate medical assistance to a serious medical condition. (Doc. 14, p. 19-20). Roberson's claims that he was denied medical treatment by Moore, Lashbrook, Aggelmeier, and Slaine specifically implicate the protections afforded by the Eighth Amendment as discussed in Count 3. The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Therefore, Roberson's claims are more appropriately analyzed under the Eighth Amendment, and Counts 4 and 5 are dismissed.

## OFFICIAL CAPACITY CLAIMS

Roberson brings his claims against the remaining defendants, Aggelmeier and Slaine, in their official and individual capacities (Doc. 14, p. 1). He also requests declaratory and monetary relief. *Id.* at p. 21. Because state officials named in their official capacities may not be sued for monetary damages in federal court, Roberson's official capacity claims are dismissed without prejudice. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

## DISPOSITION

### *Preliminary Dismissal*

**IT IS HEREBY ORDERED** that the claims against Defendant Jacueline Lashbrook for failing to provide grievance forms in violation of the Fourteenth Amendment are **DISMISSED** without prejudice for failure to state a claim.

### *Severance*

**IT IS HEREBY ORDERED** that **COUNTS 1-2** and **6-9** are **SEVERED** into two new cases as follows:

| | |
|---|---|
| **First Severed Case:** | Counts 1 and 2 against Lawrence and Lashbrook; |
| **Second Severed Case:** | Counts 6, 7, 8, and 9 against Morrison, Ostlundmeiner, and Moore. |

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1)   The First Amended Complaint (Doc. 14);
(2)   Motion for Leave to Proceed in forma pauperis (Doc. 2);
(3)   Motion for Recruitment of Counsel (Doc. 3); and
(4)   This Memorandum and Order.

**IT IS FURTHER ORDERED** that the only claims remaining in this action are **COUNTS 3, 4,** and **5** against Jacueline Lashbrook, Craig Aggelmeier, Slaine, and Moore. The Clerk of the Court is **DIRECTED** to **TERMINATE** Lawrence, Morrison, and Ostlundmeiner as a defendant in this action.

*Merits Review*

**IT IS HEREBY ORDERED** that the First Amended Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. **COUNT 3** shall proceed against Aggelmeier and Slaine, and **COUNTS 4** and **5** are **DISMISSED without prejudice**. Because there are no surviving claims against them, Lashbrook and Moore are **DISMISSED** from this action. The Clerk of Court is **DIRECTED** to **TERMINATE** them from the docket.

The Clerk of Court shall prepare for **Aggelmeier** and **Slaine** the following: (1) a Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) a Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Roberson. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Roberson, the employer shall furnish the Clerk with the defendant's current work address, or, if not

known, the last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Roberson, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Roberson is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:   October 29, 2020.**

Digitally signed by Judge Sison 2
Date: 2020.10.29 12:17:23 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions and to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.